### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

KEENAN C. WILLS

     *Plaintiff,*

*v.*

COMMISSIONER OF SOCIAL
SECURITY,

     *Defendant.*

_____ /

CASE NO. 19-12865

HON. STEPHEN J. MURPHY
DISTRICT JUDGE

HON. PATRICIA T. MORRIS
MAGISTRATE JUDGE

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (ECF No. 11, 12)

## I.    RECOMMENDATION

Plaintiff Keenan C. Wills challenges Defendant Commissioner of Social Security's final decision denying his claim for Title XVI Supplemental Security Income benefits ("SSI"). (ECF No. 1.) The case was referred to me for review. (ECF No. 3); *see* 28 U.S.C. § 636(b)(1)(B); E.D. Mich. LR 72.1(b)(3). For the reasons below, I conclude that substantial evidence supports the Commissioner's decision. Accordingly, I recommend **DENYING** Plaintiff's Motion for Summary Judgment, (ECF No. 11), **GRANTING** the Commissioner's Motion, (ECF No. 12), and **AFFIRMING** the Commissioner's final decision.

## II.    REPORT

### A.    Introduction and Procedural History

Plaintiff's application for SSI was filed on December 21, 2016. (ECF No. 9-5, PageID.174–79.) He alleges that the onset date of his disability was June 30, 2015. (*Id.*,

1

PageID.174.) The Commissioner denied the claim. (ECF No. 9-4, PageID.111.) Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which occurred on July 10, 2018. (ECF No. 9-2, PageID.62–83.) The ALJ issued a decision on October 17, 2018, finding that Plaintiff was not disabled. (*Id.*, PageID.44–61.) The Appeals Council denied review on August 15, 2019. (*Id.*, PageID.32–37.) Plaintiff sought judicial review on October 1, 2019. (ECF No. 1, PageID.1–4.) The parties have filed cross-motions for summary judgment and briefing is complete. (ECF Nos. 11–13.)

### B.  Standard of Review

The court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). "[T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions

2

of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

If the Commissioner's decision is supported by substantial evidence, "it must be affirmed

even if the reviewing court would decide the matter differently and even if substantial

evidence also supports the opposite conclusion." *Id*. at 286. (internal citations omitted).

### C.    Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*,

475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that disability is to

be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing
> substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your
> impairment(s). If you do not have a severe medically determinable physical
> or mental impairment that meets the duration requirement . . . or a
> combination of impairments that is severe and meets the duration
> requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your
> impairment(s). If you have an impairment(s) that meets or equals one of our
> listings in appendix 1 of this subpart and meets the duration requirement, we
> will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional
> capacity and your past relevant work. If you can still do your past relevant
> work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual
> functional capacity and your age, education, and work experience to see if
> you can make an adjustment to other work. If you can make an adjustment

to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing the residual functional capacity, which "is the most [the claimant] can still do despite [his or] her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.   ALJ Findings

Following the five-step sequential analysis, the ALJ determined that Plaintiff was not disabled. (ECF No. 9-2, PageID.57.) At step one, the ALJ found the Plaintiff had not engaged in substantial gainful activity since December 21, 2016, the date of the application for SSI benefits. (*Id.*, PageID.49.) At step two, the ALJ concluded that Plaintiff had the following severe impairments: spine disorder and depression. (*Id.*) These impairments did

4

not meet or medically equal a listed impairment in step three. (*Id.*) Next, the ALJ found

that Plaintiff had the residual functional capacity ("RFC") to perform

> sedentary work as defined in 20 CFR 416.967(a) except requires a sit-stand
> option (can sit up to 30 minutes, stand up to 15 minutes, and walk up to 15
> minutes at a time); allowed to be off-task less than 10% of any given
> workday; no more than occasional postural activities (no climbing of ropes,
> ladders, or scaffolds at all though); restricted to remembering and executing
> tasks consistent with unskilled work (i.e., can be learned by demonstration
> in 30 days or less).

(*Id.*, PageID.51.) At step four, the ALJ found that Plaintiff could not perform past relevant

work. (*Id.*, PageID.56.) Finally, at step five, the ALJ determined that Plaintiff could

perform a significant number of jobs in the economy, which included bench assembler,

inspector, and hand packager. (*Id.*, PageID.57.) Accordingly, Plaintiff was found not to be

disabled. (*Id.*, PageID.57.)

### E.    Administrative Record

#### 1.    Overview of Medical Evidence

Plaintiff reported to the emergency room in January 2016 at Henry Ford Health

System. (ECF No. 9-7, PageID.258.) He was having ongoing radicular symptoms in his

right leg, and he described the pain as sharp/throbbing and rated the pain as 10/10. (*Id.*) He

described ambulating without difficulty. (*Id.*) A review of systems showed that his

musculoskeletal system was negative for back pain, joint swelling, arthralgias, neck pain,

and neck stiffness; and psychiatric/behavioral systems were negative for behavioral

problems, confusion, decreased concentration and agitation. (*Id.*, PageID.259.) A physical

exam revealed normal range of motion for the musculoskeletal system. (*Id.*, PageID.260.)

No Babinski's sign on left or right side. (*Id.*) L2 hip flexion was 5/5 bilaterally, L3-4 knee

extension was 5/5 bilaterally, L4-S1 knee flexion was 5/5 bilaterally, and L5 EHL was 5/5 bilaterally, and S1 plantarflexion and ankle eversion was 5/5 bilaterally. (*Id.*) Straight leg test was equivocal on right and negative on left. (*Id.*) There was a diagnosis of radicular pain of the lower extremity. (*Id.*, PageID.261)

Later, in February 2016, Plaintiff experienced tenderness of the lumbar spine. (*Id.*, PageID.262.) Examination of his back and spine showed normal range of motion of extension, flexion, lateral bend left/right, and rotation left/right. (*Id.*, PageID.263.) His muscle strength was 5/5 for left and right hamstrings and quadriceps. (*Id.*) Straight leg raise was positive for left and right sides. (*Id.*) The assessment was that Plaintiff was experiencing sciatica associated with disorder of the lumbar spine, right. (*Id.*) Following an MRI at this time, the impression of the findings was that Plaintiff had mild disc degenerative change within the lower lumbar spine without significant central or foraminal narrowing. (*Id.*, PageID.267.)

In April 2016, Plaintiff underwent an MRI. (ECF No. 9-8, PageID.321.) At T11-12 through L3-4, the discs were normal. (*Id.*) There was facet hypertrophy at L3-4 and L4-5 that results in moderate bilateral foraminal stenosis. (*Id.*) At L4-5 and L5-S1, there was disc space narrowing. (*Id.*) There was 3mm bulging disc at L4-5. (*Id.*, PageID.321.) At L5-S1, there was moderate left-sided foraminal stenosis. (Id., PageID.321–22.) At L5-S1, there was right central herniation with right S1 nerve impingement at L5-S1; and moderate left-sided foraminal stenosis. (*Id.*)

Plaintiff underwent caudal epidural steroid injections in July and August 2016. (*Id.*, PageID.297, 307.) In both instances, it was reported that his pre-procedure pain score was

6

8/10, and his post-procedure pain score was 2/10. (*Id.*) In September 2016, Plaintiff underwent a selective nerve root block procedure. (*Id.*, PageID.286.) Plaintiff's pre-procedure pain score was 7/10, and his post-procedure pain score was 1/10. (*Id.*) Prior to the September injection, an examination concluded right L5 irritability suggesting radiculopathy, moderate demyelinating peripheral neuropathy, and no evidence of plexopathy. (*Id.*, PageID.294.)

In August 2016, Plaintiff presented to Sinai-Grace Hospital in Detroit. (ECF No. 9-7, PageID.269.) His chief complaint was right back pain, and he asked for a steroid injection. (*Id.*) Plaintiff's musculoskeletal system was described as having spontaneous range of motion of all extremities, and there was no spinal tenderness at the midline cervical, thoracic, or lumbosacral spine. (*Id.*, PageID.270.) He had tenderness over the right paralumbar musculature, which reproduces his symptoms. (*Id.*) Plaintiff was ambulatory with a slow gait. (*Id.*) He could not lay down to perform straight leg raising. (*Id.*) Plaintiff was treated according to the hospital's chronic pain policy; he was given 4 mg of morphine and discharged. (*Id.*)

Plaintiff had three appointments at the University Pain Clinic from December 12, 2016 to February 6, 2017. (ECF No. 9-8, PageID.331–42.) Plaintiff first reported constant pain in the lower back, buttock, and thigh. (*Id.*, PageID.331.) The pain was between 4/10 and 10/10 and is described as stabbing, shooting, and burning. (*Id.*) His physical examination showed thoracic spine range of motion in normal limits, and paraspinal muscle strength and tone within normal limits. (*Id.*, PageID.333.) The lumbosacral spine showed normal range of motion and paraspinal muscle strength and tone within normal limits. (*Id.*)

Straight leg raise test was positive in right side and facet loading positive bilaterally. (*Id.*) The assessment, here, was lumbar degenerative disc disease, sciatica, lumbosacral radiculopathy, lumbar spondylosis/facet syndrome, and lumbar herniated disc disease. (*Id.*) He was later scheduled for steroid injections in January 2017 (*Id.*, PageID.335) and February 2017. (*Id.*, PageID.337.)

In April 2017, Plaintiff was referred to a mental status review, through HCC Evaluations, for Disability Determination Services. (*Id.*, PageID.349.) In the history of his illness, Plaintiff described memory problems, crying for unknown reasons, having emotional problems, and injuring his back. (*Id.*) The examiner described Plaintiff as having a slow gait, and he appeared to be in pain walking into the office. (*Id.*) Plaintiff expressed feelings of helplessness, hopelessness, and worthlessness. (*Id.*, PageID.350.) Plaintiff's affect and mood were described as depressed. (*Id.*) The medical source statement says

> [Plaintiff] reported that he has been very depressed with crying spells, lack of energy, sleep problems, frustration and passive suicidal ideation for the last couple of years since he injured his back while working. He has not been able to work since 2015. He reported that he had been robbed twice in the past. The last time he was robbed 6 years ago. He was hit over the head with a chair leg and beaten on the head several times. He has had poor short-term memory problems since the head injury. He forgot the names of the people he went to school with; what he went to get from another room and what people tell him. He does take medication for depression. He has an appointment to see a therapist and psychiatrist. He did very well on digit span but could not recall 3 objects in three minutes. He cried on and off during his interview. He seldom sleeps through the night. He needs help [to] shower and getting to the bathroom. He uses a cane to ambulate. He does not appear able to do work related activity.

(*Id.*)

8

In April 2017, Plaintiff complained of long-term memory loss. (ECF No. 9-12, PageID.503.) He explained that "he is forgetting names and faces of people he knows [and] also forgetting how to get places he used to go to often." (*Id.*) The reason for this was that he sustained head injuries but no head trauma. (*Id.*, *see also Id.*, PageID.481.)

In May 2017, the impression from an MRI found right paracentral disc extrusion at L5-S1 impinges right S1 nerve roots; disc bulge at L4-L5 slightly impinged on the intradural left L5 nerve roots; and multilevel facet arthropathy resulting in mild bilateral neural foraminal stenosis from L3 through S1. (*Id.*, PageID.492.) Also, around this time, he had an x-ray that showed his lungs and heart were normal. (*Id.*, PageID.491.) Further, at another medical appointment, an examiner's assessment of Plaintiff included major depression, hypertension, late effects of nontraumatic hemorrhage memory deficit, primary gout of ankle and foot, and body mass index. (*Id.*, PageID.479.) Plaintiff also received a prescription for a cane. (*Id.*, PageID.480.)

In June 2017, physical findings of the Plaintiff's back included "no spinal tenderness noted. [Plaintiff] walks with a [cane] and is hunched over and walks slowly and stiffly. 3/5 strength in legs on flexion and extension bilaterally. Paraspinal muscles bilaterally in lumbar area are tender and tight." (*Id.*, PageID.473.) Finally, Plaintiff's physical exam showed negative straight leg raise, and tenderness over the lower lumbar spine of the L5-S1 area. (ECF No. 9-11, PageID.427, *see also Id.*, PageID.430.) Plaintiff discussed surgical treatment for his back issues. (*Id.*, PageID.427.) Also, in June 2017, Dr. Peter opined that Plaintiff needed assistance with various personal care activities, including toileting, bathing, grooming, dressing, mobility, housework, meal preparation, and laundry. (ECF

No. 9-9, PageID.355.) Further, Dr. Peter's opinion was that Plaintiff could not work any job. (*Id.*) In August 2017, Plaintiff reported experiencing panic attacks that last for 20 minutes every other day, followed by crying spells and difficulty breathing. (ECF No. 9-12, PageID.471.) Plaintiff reported Prozac medication was not helping. (*Id.*) Next, Plaintiff reported that his attempts at walking show that he can walk about one block before stopping and resting. (ECF No. 9-11, PageID.424.) Ultimately, Plaintiff underwent a decompression and discectomy surgical procedure. (ECF No. 9-12, PgID.488.) Plaintiff reported that he still feels pain in his right thigh and numbness in his right foot. (*Id.*, PageID.470, *see also* ECF No. 9-11, PageID.424.) Further, the symptoms did not resolve after surgery. (*Id.*, *see also* ECF No. 9-11, PageID.431.) Plaintiff was advised, regarding the continued symptoms, that pain symptoms require time to adjust, considering pain medication before surgery adjusted his pain tolerance. (ECF No. 9-11, PageID.432.)

In September 2017, Dr. Philip assessed Plaintiff's ability to do work-related activities. (ECF No. 9-9, PageID.357–59.) Among his findings were that Plaintiff could stand or walk up to four hours a day, with one hour uninterrupted; that Plaintiff would need 3–5 unscheduled breaks per day of 5–10 minutes each; and that Plaintiff would likely be absent more than four days per month because of his impairments. (*Id.*, PageID.358.) Plaintiff also could rarely stoop, squat, or climb ladders; and his impairments could frequently interfere with his concentration and attention. (*Id.*, PageID.359.)

Also, in September 2017, Plaintiff reported that he was noticing some health improvements, such as being able to move his toes. (ECF No. 9-12, PageID.467.; *see also* ECF No. 9-11, PageID.433.) Examination of plaintiff revealed no abnormalities of the

cervical and thoracic spine. (*Id.*, PageID.466.) Plaintiff reported that pain related to the lumbar radiculopathy is getting better, but his memory loss is getting worse. (*Id.*, PageID.464.) Later, the back and leg pain returned. (*Id.*, PageID.462.)

In October 2017, Plaintiff's lumbosacral spine exhibited abnormalities, lumbosacral spinal motion was abnormal at it elicited pain. (*Id.*, PageID.461.) At another physical examination, his paraspinal muscle strength and tone were within normal limits, but his spinal range of motion was reduced because of pain. (ECF No. 9-13, PageID.515.) He had a positive straight leg raise test at the right lower extremity at 10 degrees, and a positive facet loading test at the right side. (*Id.*)[1]

In November 2017, Plaintiff had a follow-up appointment following an emergency room visit concerning complaints of panic attacks, anxiety, and depression. (ECF No. 9-13, PageID.457.) Additionally, Plaintiff experienced no intermittent leg claudication, and regarding his lumbar radiculopathy, his pain was getting better, but he still felt numbness. (*Id.*, PageID.457–58.) Also, Plaintiff's bilateral upper and lower extremities' strength were rated 5/5, and he had a normal gait. (ECF No. 9-11, PageID.421.)

In January 2018, Plaintiff was able to stand without difficulty, and ambulates with the assistance of a cane. (ECF No. 9-13, PageID.526; *see also Id.*, PageID.531.) In February 2018, it was noted that Plaintiff was ambulating well, while still noting residual right lower extremity numbness involving the right forefoot that was improved from his

---

[1] The lumbosacral muscle strength, range of motion, and straight leg raise tests also continued based on records from November 2017 (ECF No. 9-13, PageID.519), January 2018 (*Id.*, PageID.525), and February 2018 (*Id.*, PageID.530).

preoperative baseline. (ECF No. 9-11, PageID.435.) Wearing a shoe was still somewhat irritating because of numbness in his foot. (*Id.*) Right leg appendicular pain was significantly improved compared to before his operation. (*Id.*)

In March 2018, Plaintiff had an unremarkable MRI of the brain. (ECF No. 9-12, PageID.489.)

In April 2018, Plaintiff's lumbosacral paraspinal muscle strength and tone were within normal limits, and he had a negative bilateral straight leg raise test and negative facet loading test. (ECF No. 9-13, PageID.535). Further, his right and left lower extremities' strength were all rated 5/5, and motor function showed normal tone, no atrophy, and normal movements. (*Id.*, PageID.536.) Plaintiff was able to stand without difficulty at a June 2018 examination. (*Id.*, PageID.543.)

Plaintiff was evaluated for mental impairment. (ECF No. 9-12, PageID.508–11.) The prognosis was poor because "no positive outcomes have been evident since starting treatment." (*Id.*, PageID.508.) Plaintiff reported his aches and pain "affect his psychological well-being." (*Id.*) The therapist could not estimate a number of days of missed work for Plaintiff, but it was believed that Plaintiff would not be productive in this work environment. (*Id.*, PageID.509.) Further, his psychological symptoms might impact his attention and concentration. (*Id.*) Plaintiff reported that he cannot do any ordinary routine without special supervision. (*Id.*)

In July 2018, Plaintiff underwent a consultative examination, following the order from the ALJ at the hearing. (ECF No. 9-13, PageID.546–559; ECF No. 9-2, PageID.83.) Examination revealed that "Straight leg raising caused increased pain on the right at 40

12

degrees; rest was negative." (ECF No. 9-13, PageID.547.) Plaintiff's upper extremities had normal range of motion. (*Id.*) For the lower extremities: his right hip, right knee, and right ankle all had mild tenderness. (*Id.*) Range of motion was slightly limited at the right knee. (*Id.*) Range of motion for all other joints were within normal limits. (*Id.*) Plaintiff's muscle strength in upper extremities was 4+ to 5-. (*Id.*, PageID.548.) His right hip muscle strength was 3+ to 4-, right knee was 4 to 4+, and right ankle was 4 to 4+. (*Id.*) Deep tendon reflexes were decreased in both lower extremities. (*Id.*) Plaintiff has difficulty walking and balancing because of right leg weakness, numbness, and pain. (*Id.*)

> The examination report had the following medical source statement:
>
> [Plaintiff] has history of lumbar laminectomy and has history of lumbar pain and right lower extremity radiculopathy due to disc herniation and back injury, status post lumbar laminectomy. He has chronic lumbar pain with right leg weakness and radicular pain as well as numbness and gait imbalance. [Plaintiff] currently has a cane and walker which he uses for ambulation. He has difficulty and needs assistance with ADLs due the conditions listed above, as mentioned in HPI.

(*Id.*, PageID.548.)

Based on the Doctor's examination, the Doctor believed that Plaintiff could not sit, stand, bend, stoop, tie shoes, dress/undress, and squat or arise from squatting. (*Id.*, PageID.549.) Plaintiff could carry, push, pull, button clothes, open doors, pick up coins or pencils, write, climb stairs. (*Id.*) The Doctor stated that clinical evidence supports Plaintiff's inability to stand up from a seated position and to maintain balance in a standing position. (*Id.*, PageID.550.) In addition, a walking aid is clinically required because Plaintiff would fall without it. (*Id.*) His range of motion was reduced in the cervical and lumbar spine, and the right hip, right knee, and right ankle. (*Id.*, PageID.551–52.) His range

13

of motion for shoulders, elbows, and left hip, left knee, and left ankle were normal. (*Id.*) Plaintiff could frequently lift and carry up to 10 pounds, and occasionally lift and carry up to 20 pounds. (*Id.*, PageID.553.) Plaintiff can sit and stand for 30 minutes and walk up to 60 minutes, without interruption. (*Id.*, PageID.554.) In an 8-hour day, Plaintiff could sit for four hours, stand for three hours, and walk for one hour. (*Id.*) A cane is medically necessary for Plaintiff, and he can use his free hand to carry small objects. (*Id.*) Plaintiff can occasionally reach or push/pull and frequently handle and finger. (*Id.*, PageID.555.) He can occasionally use foot controls. (*Id.*) He can occasionally climb stairs, climb ladders, balance, stoop, kneel, or crouch. (*Id.*, PageID.556.) Plaintiff cannot ambulate without a walker, or two canes, or two crutches. (*Id.*, PageID.558). He also cannot walk a block at a reasonable pace. (*Id.*)

As a part of Plaintiff's application for SSI, Plaintiff was evaluated by state agency Drs. Flores and Williams-White. (ECF No. 9-3, PageID.97–108.) Plaintiff was found to have medically determinable impairments of spine disorder and depressive/bipolar disorder (*Id.*, PageID.102.) Plaintiff's abilities to understand, remember, and apply information; interact with others; concentrate or maintain pace; and adapt or manage oneself were all described as mild. (*Id.*, PageID.103.) Dr. Williams-White recognized inconsistency in the medical record where Plaintiff reported severe symptoms which were later denied at other clinical appointments. (*Id.*) Further, a severe diagnosis was not supported by the medical record. (*Id.*) And the assessment was based heavily on Plaintiff's subjective reporting. (*Id.*) An assessment, here, was that Plaintiff has lumbar degenerative disc disease with radiculopathy, but this does not meet Listing 1.04. (*Id.*, PageID.105.)

Further, Dr. Flores rated Plaintiff's limitations at occasionally lifting 20 pounds and frequently lifting 10 pounds. (*Id.*) Plaintiff could stand or walk for six hours of an 8-hour day and sit for six hours of an 8-hour day. (*Id.*, PageID.106.) Plaintiff could occasionally climb stairs, climb ladders, balancing, stooping, kneeling, crouching, or crawling. (*Id.*) He has no manipulative, visual, communication, or environmental limitations. (*Id.*) At the application of medical/vocational rules, Plaintiff could do light work, and was not limited to unskilled work. (*Id.*, PageID.107.) And accordingly, Plaintiff was found to be not disabled. (*Id.*)

### 2.     Application Reports and Administrative Hearings

### a.     Function Report

Plaintiff completed a function report on February 11, 2017 for his application for SSI. (ECF No. 9-6, PageID.210.) He stated he lives in an apartment with friends. (*Id.*, PageID.203.) He explained his current condition limits his ability to work because he cannot stand up straight or stand too long, and he is in pain and the medication he is on makes him drowsy. (*Id.*) He described his time, from when he wakes up to when he returns to bed, as he "live[s] in pain. I try to get better therapy." (*Id.*, PageID.204.) He did not provide care for other people or animals. (*Id.*) He said his condition affected his sleep and personal care: it takes forever for him to dress; he needed help bathing; he has a problem cooking; and it hurts to lift, carry, bend, or pull. (*Id.*) He needed help or reminders for his personal needs, grooming, and taking medicine. (*Id.*, PageID.205.) He said, "some days I sleep the days away the pain is so bad." (*Id.*)

15

He does not prepare meals, and he gets help from a friend for this task. (*Id.*) He does not do this because of his condition and the pain to lift, carry, stand, and pull. (*Id.*) He does not do any indoor or outdoor household chores because of his pain. (*Id.*, PageID.205–06.)

Plaintiff goes outside about two–three times per week, for his therapy appointments. (*Id.*, PageID.206.) When he goes out, he does not drive, he has insurance transportation. (*Id.*) He shops in stores, for food, and that store is down the street from where he lives. (*Id.*)

He cannot pay bills or handle a savings account, but he can count change and use a check book. (*Id.*)

Plaintiff's hobbies or interests include recording music. (*Id.*, PageID.207.) It has been over a year since he has done this. (*Id.*) Plaintiff does spend time with others, either in person or over the phone. (*Id.*) He does this a couple of times per week. (*Id.*) He needs reminders to go places, and he needs someone to accompany him. (*Id.*)

He does not have problems getting along with family and friends. (*Id.*, PageID.208.) He gets along fine with authority figures. (*Id.*, PageID.209.)

Plaintiff says his condition affects these following abilities: lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, stair climbing, memory, and completing tasks. (*Id.*, PageID.208.) He says with his condition, lifting 10 pounds hurts, and on good days, he can almost stand up straight. (*Id.*) He can walk past three houses before he needs to rest for 10–15 minutes. (*Id.*) He says he is okay or good for paying attention and following written or spoken instructions. (*Id.*)

He was never fired for problems with getting along with people. (*Id.*, PageID.209.) Plaintiff says he handled stress fine until his back went out in June 2015. (*Id.*) He says he

16

can handle changes in routine fine, but he is unable to move and that causes a lot of stress. (*Id.*) He says he experiences agitation, anxiety, and mood swings. (*Id.*)

He uses crutches, a cane, or a brace/splint, but none of these were prescribed by a doctor. (*Id.*) He uses these, one or all of them, on a daily basis. (*Id.*) He takes medications because of his condition, and some have side-effects of making him sleepy. (*Id.*, PageID.210.)

### b.    Plaintiff's Testimony at the Administrative Hearing

Plaintiff testified that he is 46 years old, and he has an 11th-grade education. (ECF No. 9-2, PageID.65.) He is 6' 2" tall, and 210 lbs. (*Id.*, PageID.67.) He has experience and income as a cook at several employers, and numerous years of no reported income from several jobs. (*Id.*, PageID.66–67.) His last work was for a tool-rental business, and this is the place where he injured his back in 2015. (*Id*., PageID.69, 75.)

At the time of Plaintiff's testimony, Plaintiff had back surgery about one year earlier. (*Id.*, PageID.69.) Plaintiff says that he still experiences pain, specifically he cannot put a shoe on, and his right foot is still numb. (*Id.*) He is scheduled for more back surgery. (*Id.*) He has gone through physical therapy and injections. (*Id.*, PageID.71.) Plaintiff is planning on having fusion surgery done. (*Id.*)

Plaintiff is prescribed medication for his condition. (*Id.*, PageID.72.) He takes Mobic, Percocet, and Gabapentin for pain, Vistaril for panic attacks, and Zoloft for depression. (*Id.*) Plaintiff rates his back pain as a 10 without the medication and 6.5 with the medication. (*Id.*, PageID.73.) The medication makes him drowsy sometimes. (*Id.*) In

addition to the medication, to relieve his pain, Plaintiff will soak in a tub, play with medicine balls, and get a massage. (*Id.*, PageID.76.)

Plaintiff uses a cane to help him walk and stand. (*Id.*, PageID.72–73.) Plaintiff says that a Doctor prescribed that to him. (*Id.*, PageID.72.)

Plaintiff's present income is from food stamps and medical coverage. (*Id.*, PageID.73.) He has a caregiver that's been provided to him, as well, and he resides with her. (*Id.*, PageID.70, 73.)

Plaintiff sees a psychologist for mental health care. (*Id.*, PageID.74.) His overall concerns he addresses with the psychologist stem from the toll taken on him because of his inability to care for himself. (*Id.*)

Plaintiff says he has difficulty being around people. (*Id.*, PageID.75.) He feels that is because of his depression, that people are talking about him negatively, and that he does not like to talk to others. (*Id.*)

During the day, Plaintiff said the most comfortable position for him is sitting in his lazy boy chair with his leg up. (*Id.*, PageID.76.) He can be in the chair for about four hours a day. (*Id.*) He can stand for about 30 minutes with his cane. (*Id.*) He can walk to the corner with his cane. (*Id.*)

He says he can lift five to ten pounds. (*Id.*, PageID.77.)

### c.    The Vocational Expert's ("VE") Testimony at the Administrative Hearing

The VE classified Plaintiff's prior work as fast food cook and construction laborer. (*Id.*, PageID.79.) The classifications of these positions are, according to the *Dictionary of*

*Occupational Titles* ("*DOT*"): for fast food cook, *DOT* 313.381-014, skilled, SVP 5, medium; for construction laborer, *DOT* 869.687-026, unskilled, SVP 2, very heavy. (*Id.*)

    The first hypothetical that the ALJ presented was as follows:

> assume a hypothetical individual the same age, education and work background as the [Plaintiff]. This individual is limited to the light exertional level of work, this individual would require a sit/stand option, by saying that I mean this individual could sit for up to 30 minutes at a time, stand for up to 15, stand and/or walk up to 15 minutes at a time. But by exercising that option would be off task less than 10% of any given workday. Postural activities could be done occasionally, however, no climbing of ladders, ropes or scaffolds. This individual is capable of understanding, remembering and executing tasks commensurate with unskilled work, meaning could be work that could be learned by demonstration or at 30 days or less.

(*Id.*, PageID.79–80.) The VE identified that this person could not do Plaintiff's past work. (*Id.*, PageID.80.) The VE identified three types of light, unskilled work that the hypothetical person could do: inspector, bench assembler, and hand packager. (*Id.*) The details of these positions are inspector, *DOT* 559.687-074 and 40,000 national jobs; bench assembler, *DOT* 706.684-022 and 30,000 national jobs; hand packager: *DOT* 920.687-166; 40,000 national jobs. (*Id.*)

    The ALJ inquired of the same hypothetical, but at the sedentary level of work. (*Id.*) The VE responded with the following jobs: inspector, *DOT* 669.687-014 and 130,000 national jobs; bench assembler, *DOT* 713.687-018 and 150,000 national jobs; and hand packager, *DOT* 712.687-018 and 140,000 national jobs. (*Id.*)

    The ALJ inquired if the "individual required the use of a cane or an assistive device and that would be to and from the workstation, on breaks but not while the actual work was

being performed", would that change the jobs stated or the numbers of jobs. (*Id.*, PageID.81.) The VE's response was no. (*Id.*)

The ALJ asked if there was conflict between the VE testimony and the *Dictionary of Occupational Titles*, and the VE explained that use of assistive devices, off-task time, and sit/stand options are not covered in the *DOT*. (*Id.*) That information was based on the VE's experience. (*Id.*)

At this hearing, Plaintiff's counsel also inquired of the VE. If a cane was needed for standing with the sit/stand option in the hypothetical, as asked by counsel, the VE responded that if that would put the individual off-task for more than 20% of the workday, then that would eliminate the identified jobs. (*Id.*) Similarly, if the individual required half of the day to lie down, that would eliminate the identified jobs under the same off-task standard. (*Id.*) Finally, if the individual required a certain type of shoe to work, the VE responded that would depend on the employer and the VE could not speculate how that would affect the jobs identified. (*Id.*)

### F.   Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into categories: "acceptable medical sources" and "other sources." 20 C.F.R. §§ 404.1513 (amended March 27, 2017), 416.913 (amended March 27, 2017). "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* §§ 404.1513(a), 416.913(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.*

20

§§ 404.1513(d), 416.913(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Both acceptable and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id*. When acceptable medical sources issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. §§ 404.1527 (eff. Sept. 3, 2013 to Mar. 26, 2017), 416.927 (eff. Aug. 24, 2012 to Mar. 26, 2017). Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id*. §§ 404.1527(d), 416.927(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. *Id*. §§ 404.1527(c) (eff. Sept. 3, 2013 to Mar. 26, 2017), 416.927(c) (eff. Aug. 24, 2012 to Mar. 26, 2017). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540–42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

21

Because Plaintiff filed her claim before March 27, 2017, she is entitled to the benefit of the treating-source rule. Under that rule, certain opinions of a treating physician receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. §§ 404.1527(d), 416.927(c)(2). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to a treating source's opinion in the written determination. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits must give specific reasons, supported by record evidence, for the weight granted to a treating source's opinion. *Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640–41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

The claimant must provide evidence establishing his or her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S.

at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2).

According to SSR 16-3p, an ALJ must analyze the consistency of the claimant's statements with the other record evidence, considering his or her testimony about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in the Social Security Ruling. SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). This analysis and the conclusions drawn from it—formerly termed a credibility determination—can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529(a) (2016); SSR 16-3p, 2016 WL 1119029, at *2 (March 16, 2016). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529 (2016); SSR 16-3p, 2016 WL 1119029, at *2 (March 16, 2016); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 16-3p, 2016 WL 1119029, at *6 (March 16, 2016).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071) (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled." 20 C.F.R. § 404.1529(a). The absence of objective, confirming evidence obligates the ALJ to consider the following factors:

(i)     [D]aily activities;
(ii)    The location, duration, frequency, and intensity of . . . pain;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication . . taken to alleviate . . . pain or other symptoms;
(v)     Treatment, other than medication, . . . received for relief of . . . pain;
(vi)    Any measure . . . used to relieve . . . pain.

20 C.F.R. § 404.1529(c)(3), 416.929(c)(3) (2016); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039–40 (6th Cir. 1994); SSR 16-3p, 2016 WL 1119029, at *7 (March 16, 2016).

G.    **Arguments and Analysis**

1.    **Plaintiff's impairments are not presumptively disabling.**

Plaintiff argues that his impairments are presumptively disabling, as they qualify as a listed impairment and contrary to the finding of the ALJ. I suggest that Plaintiff is incorrect.

At step three of the five-step sequential evaluation to determine Plaintiff's disability status, the ALJ must determine if Plaintiff's impairments meet or medically equal a listing section. 20 C.F.R. § 416.920(a)(4)(iii). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that

24

manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*

*v. Zebley*, 493 U.S. 521, 530 (1990).

Specifically, Plaintiff identifies, as applicable here, the listing of disorders of the

spine, found in Section 1.04 of 20 C.F.R. Pt. 404, Subpt. P., App. 1. The text of this section

is as follows:

> 1.04   *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P., App. 1[2]. (Quotation format condensed.)

In support of Plaintiff's claim that his condition qualifies as a listed impairment,

Plaintiff relies heavily on the single consultative examiner's report of Dr. Nahata (ECF No.

---

[2] By the terms of 20 C.F.R. Pt. 404, Subpt. P., App. 1, there is an effective end date of January 27, 2020 for 1.00 Musculoskeletal System. However, the effective end date was extended to February 4, 2022 via final administrative rule. Extension of Expiration Dates for Five Body System Listings, 84 Fed. Reg. 64,993 (Nov. 26, 2019) (to be codified 20 C.F.R. Pt. 404).

9-13, PageID.546–59) and additional citation to other record evidence of positive straight leg raising, muscle weakness and reflex loss (Pl. Br., ECF No. 11, PageID.573).

The ALJ stated "[Plaintiff's] arthralgias failed to meet or medically equal Listings 1.00 of the Appendix 1 impairments. *The record, consistent with the findings below,* does not demonstrate . . . disorders of the spine (1.04)." (ECF No. 9-2, PageID.50) (emphasis added.) The ALJ considered at length the whole record evidence, and the weight given to each individual record, in determining Plaintiff's residual functional capacity.[3] While counsel here has characterized the ALJ's analysis at Step 3 as "cursory" (Def. Br., ECF No. 12, PageID.612; Pl. Rep., ECF No. 13, PageID.630), the Court relies on the persuasive direction found in *Schoolfield v. Barnhart*, 220 F. Supp.2d 512 (D. MD. 2002), where it stated that remand is appropriate for a clear explanation of medical evidence in support of the conclusion reached

> except in those circumstances where it is clear from the record which listing or listings in the [Listing of Impairments] were considered, and *there is elsewhere in the ALJ's opinion an equivalent discussion* of the medical evidence relevant to the Step Three analysis which allows this Court readily to determine whether there was substantial evidence to support the ALJ's Step Three conclusion.

*Schoolfield*, at 522. (Emphasis added.) Here, the ALJ considered Dr. Nahata's musculoskeletal examination of Plaintiff, saying

> The positive signs on examination were limited range of motion and significant spasm and tenderness in the lumbar spine, mild spasm and tenderness in the cervical spine, mild tenderness in the right knee, slightly

---

[3] *See also Biehl v. Comm'r of Soc. Sec.*, 2015 WL 736366 at *15 (E.D. Mich. 2015) ("the Sixth Circuit 'has consistently rejected a heightened articulation standard, noting . . . that the ALJ is under no obligation to spell out every consideration that went into the step three determination or the weight he gave each factor in his step three analysis, or to discuss every single impairment.") (internal quotation marks omitted).

> reduced range of motion in the right knee, and mild tenderness and edema of
> the right ankle with some limited range of motion.

(ECF No. 9-2, PageID.54; citing ECF No. 9-13, PageID.547.) Consistent with this finding

is Dr. Nahata's neurological examination of Plaintiff, which showed[4]

> Muscle strength in upper extremities is mostly 4+ or 5-, right lower extremity
> hip flexor, abductor and external rotator 3+ to 4-, right knee flexors and
> extensors 4 to 4+, right ankle dorsiflexion 4 to 4+. Left lower extremity 4+
> to 5- Deep tendon reflexes are decreased in both lower extremities, especially
> Achilles tendon. Deep tendon reflexes were normal in both upper
> extremities. He has difficulty walking and decreased balance due to right leg
> weakness, numbness and pain with ataxic and compensated gait.

(ECF No. 9-13, PageID.548.)

Turning to the elements of § 1.04(A), Dr. Nahata's report notes 1) Plaintiff's history

of lumbar pain and right lower extremity radiculopathy (*Id.*) and 2) limited range of motion

of the lumbar spine (*Id.*). However, as indicated above, Plaintiff overstates the elements of

3) motor loss accompanied by sensory or reflex loss and 4) positive straight leg raise tests

in the sitting and supine positions. The federal regulations state, for example, that "Inability

to walk on the heels or toes, to squat, or to arise from a squatting position, when

appropriate, may be considered evidence of significant motor loss." 20 C.F.R. Pt. 404,

Subpt. P., App. 1 § 1.01(E). Here, Plaintiff can[5] occasionally climb stairs, stoop, kneel, and

---

[4] Notably, the ALJ opinion lacks direct reference to Dr. Nahata's neurological examination of Plaintiff. However, the ALJ noted mild positive signs on examination, and the RFC's conditions are not contradicted by this evidence. Further, "it is well settled that: [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx 496, 507–08 (6th Cir. 2006) (quoting *Loral Defense Systems–Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir.1999)).

[5] The Court notes what seems to be internal contradictions within Dr. Nahata's evaluation: Plaintiff can, with a cane, use his free hand to carry small objects (ECF No. 9-13, PageID.554), but he cannot ambulate without using a walker, 2 canes, or 2 crutches (*Id.*, PageID.558) (which are devices that require the use of two hands). Plaintiff cannot squat and arise from squatting (*Id.*, PageID.549), but he can occasionally balance, stoop, kneel, and crouch. (*Id.*, PageID.556). This is a notable record itself, in the context of the

27

crouch (ECF No. 9-13, PageID.556), and he can walk for up to 60 minutes (*Id.*, PageID.554). This record evidence does not suggest significant motor loss, and further while there has been a noted decrease in muscle strength, Plaintiff has not experienced sensory or reflex loss that needs to accompany motor loss, considering the whole record. Alternatively, there is no report of atrophy that would fulfill the standard of 1.04(A) in the context of 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 1.00(E).[6] Next, Dr. Nahata stated "straight leg raising caused increased pain on the right at 40 degrees; rest was negative." (ECF No. 9-13, PageID.548.) Plaintiff has also experienced other negative straight leg raising tests, or tests that do not indicate the result in the sitting and supine positions, in the recent 12-month period.[7] "The sporadic findings of neuroanatomic pain between the alleged onset date . . . and the date of the ALJ's decision . . . do not demonstrate that plaintiff's symptoms persisted over a period of time as required by § 1.00D." *Davis v. Comm'r of Soc. Sec.*, 2019 WL 6208732, at *7 (E.D. Mich. 2019), adopted 2019 WL 6173802 (E.D. Mich. 2019) (internal quotation marks omitted). *See also* Acquiescence Ruling 15-1(4), 80 Fed. Reg. 57,418 (Sept. 23, 2015).

---

whole record, as the Court is not trying to resolve conflicts of evidence or to review the case de novo, only to see whether the ALJ's decision is supported by substantial evidence on the whole record.

[6] "However, a report of atrophy is not acceptable as evidence of significant motor loss without circumferential measurements of both thighs and lower legs, or both upper and lower arms, as appropriate, at a stated point above and below the knee or elbow given in inches or centimeters. Additionally, a report of atrophy should be accompanied by measurement of the strength of the muscle(s) in question generally based on a grading system of 0 to 5, with 0 being complete loss of strength and 5 being maximum strength." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 1.00(E)

[7] *See* ECF No. 9-12, PageID. 430; ECF No 9-13, PageID.515, 519, 525, 535. Also, the definition of loss of function requires the condition to have lasted, or is expected to last, at least 12 months. 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 1.00(B)(2).

Overall, substantial evidence supports that Plaintiff retains motor function and sensory and reflex abilities, and he does not meet all the elements of Section 1.04(A) disorders of the spine.

Next, Plaintiff's conditions do not meet or equal Section 1.04(C). The record does not have a reference to occurrence of psuedoclaudication. Even if we assume that Plaintiff's chronic lumbar pain qualifies as chronic nonradicular pain under the regulation, there is no result in an ability to effectively ambulate. Regulations define ineffective ambulation as generally "having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that *limits the functioning of both upper extremities*." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 101(B)(2)(b)(1) (emphasis added). Save one, there is no record of Plaintiff's cane use limiting both upper extremities.[8] As referenced above in footnote 5, Dr. Nahata refers to both the use of a single cane and two canes/crutches (or walker). This minor discrepancy in the record does not change the overall findings of the evidence found by the ALJ.

Overall, substantial evidence supports that Plaintiff does not meet all of the elements of Section 1.04(C) disorders of the spine.

Because Plaintiff's condition does not meet or equal the listed conditions of Sections 1.04(A) or (C), Plaintiff is not presumptively disabled under those listed impairments, as found by the ALJ.

---

[8] *E.g.* ECF No. 9-9, PageID.357 ("*a* cane"); ECF No. 9-11, PageID.424 ("*an* assistive device"); *Id.*, PageID.433 ("*a* cane"); ECF No. 9-12, PageID.443 ("*a* cane"); *Id.*, PageID.471; *Id.*, PageID.473 ("*a* cane"); ECF No. 9-13, PageID.526 ("[*a*] cane"). The indefinite singular articles "a" or "an" are emphasized to illustrate these are references to one cane, not two canes.

     **2.**     **The ALJ appropriately determined Plaintiff's residual functional capacity, regarding the use of an assistive device for standing and ambulation.**

Plaintiff argues that the ALJ never considered Plaintiff's use of an assistive device for standing and ambulation in determining Plaintiff's RFC. Plaintiff is incorrect. The ALJ considered limitations in the RFC based on Plaintiff's testimony (ECF No. 9-2, PageID.52.), the University Pain Clinic (*Id.*), and together with weighing the opinions of Drs. Peter, Philip, Flores, and Nahata. (*Id.*, PageID.52–54.)

The ALJ limited Plaintiff to sedentary work with a sit-stand option, among other limits. (ECF No. 9-2, PageID.51.) Plaintiff argument appears to ignore the sit-stand option, and he focuses instead—initially—on the fact that the sedentary work definition, alone, includes the possibility of standing and walking being occasionally required. 20 CFR 416.967(a). From this, next, Plaintiff posits that the next level of restriction that should have been considered—but was not—is a limitation that work be sit-down only or allow only incidental standing/walking. Plaintiff offers no medical evidence in support of this restriction, other than common citation of Plaintiff's use of a walker or the medical need for a walker. If in fact greater limitations are necessary for Plaintiff's RFC, it is Plaintiff's burden to support that. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (citing *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999)) (the Plaintiff bears the burden of demonstrating the need for a more restrictive RFC). Here, the ALJ considered

the record evidence (which was also absent from Plaintiff's argument) of when Plaintiff had normal gait and ability to stand[9], in addition to reported instances of the need of a cane.

A final argument from Plaintiff, here, and similar to the sit-only/incidental standing-walking argument above, is the ALJ failed to craft a hypothetical about requiring an assistive device for standing and walking. Again, in consideration of the whole record— particularly Plaintiff's testimony, the University Pain Clinic records, and medical opinion evidence—the ALJ is only required to include limitations in the hypothetical question "accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (internal citation omitted). The ALJ considered all the medical evidence in the record and used credible limitations in the RFC. The ALJ's RFC is supported by substantial evidence.

### 3.     The ALJ's determination at step five is supported by substantial evidence and is without error.

At step five, the ALJ considers Plaintiff's RFC and his "age, education, and work experience to see if [he] can make an adjustment to other work. If [he] can make an adjustment to other work, [the ALJ] will find that [he is] not disabled." 20 C.F.R. § 416.920(a)(4)(v). The ALJ found Plaintiff had a limited education.[10] (ECF No. 9-2, PageID.56.) The ALJ, based on VE testimony and the *Dictionary of Occupational Titles*, determined that Plaintiff could perform the work of inspector, bench assembler, and hand packager. (ECF No. 9-2, PageID.57; *see also Id.*, PageID.80.)

---

[9] *See* ECF No. 9-7, PageID.258; ECF 9-9, PageID.358; ECF No. 9-11, PageID.421, ECF No. 9-13, PageID.536; *Id*, PageID.543.
[10] Plaintiff testified that he has an 11th grade education. (ECF No. 9-2, PageID.65.)

Plaintiff argues that he lacks the educational requirements for inspector and hand packager. The information underlying this argument is based on data from Job Browser Pro. (Pl. Br., ECF No. 11, PageID.576; ECF No. 11-1). The Job Browser Pro is information outside of the administrative record[11], and following the denial of review by the Appeals Council, "the Court must base its review of the ALJ's decision upon the administrative record presented to the ALJ." *Meyers v. Comm'r of Soc. Sec.*, 2018 WL 4266244 at *2 (W.D. Mich. 2018) (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 478 (6th Cir. 2003)) (*cf. Morris v. Comm'r of Soc. Sec*, 2019 WL 3755272 at *7 (E.D. Mich 2019) (where the VE explained there was reliance on Job Browser Pro in the VE's testimony)). Thus, it would be in error to consider Plaintiff's Job Browser Pro data.

---

[11] Regarding the complete—and closed—administrative record, the facts of the instant case are similar to *Meyers v. Comm'r of Soc. Sec.*, 2018 WL 4266244 at *2 (W.D. Mich. 2018), and thus suggests a similar result. In *Meyers*:

> Plaintiff did not ask the ALJ to leave the record open or seek leave to file a post-hearing brief. Where the transcript clearly shows that plaintiff's representative "did not seek to have the record remain open until such time as other evidence could be made a part of the record, suggests that the claimant considered the evidence before the ALJ to be complete and sufficient to support his claim." *Collins v. Commissioner*, No. 10-15000, 2011 WL 6654467, at *4 (E.D. Mich. Nov. 9, 2011) (collecting cases); see *Cranfield v. Commissioner*, 79 F. App'x 852, 859 (6th Cir. 2003) (Where a claimant fails to notify the ALJ that additional evidence will be forthcoming, fails to seek a continuance on that basis, and proceeds to a hearing without all his evidence, he "must live with the consequences.").

> The purpose of the hearing is to give the claimant an opportunity to present evidence. Once concluded, ALJs have the option to reopen a hearing to receive new and material evidence, but are under no obligation to do so. An ALJ does not abuse her discretion if she refuses to consider or fails to consider post-hearing evidence which is not accompanied by a request to reopen the hearing. *see Davis-Gordy v. Commissioner*, No. 1:11-cv-243, 2013 WL 5442418, at *7 (W.D. Mich. Sept. 30, 2013 (collecting cases). Plaintiff never filed a request asking the ALJ to reopen the hearing. See 20 C.F.R. § 404.944 [or 20 C.F.R. § 416.1444].

*Id.* at *3.

Plaintiff next argues that, based on the argument above, that there was an apparent conflict between the VE's testimony and the *DOT*, and further that it was unresolved by the ALJ. Plaintiff is incorrect. To be clear, the alleged unresolved conflict is that inspector and hand packager positions require a high school diploma and Plaintiff does not have that level of education. Notwithstanding the matter that the argument is based on evidence not considered by the ALJ, the Job Browser Pro states that a high school diploma is sufficient for basic product testing; it does not say that it is necessary.[12] This is consistent with the *DOT*, where it indicates that these two positions have an SVP level of 2. "Jobs with an SVP level of one or two are considered unskilled work, and unskilled work is appropriate for a person with a limited education." *Morgan v. Colvin*, 2015 WL 5612039 at *9 (E.D. Ky 2015). *See also Pompos v Comm'r of Soc. Sec.*, 2014 WL 1154247 at *2 (N.D. Ohio 2014) ("A 'limited education level' (through 11th grade) implies that the individual's abilities are limited to unskilled work."

There is no apparent conflict, and "the ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00–4p. This obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT." *Beinlich v. Comm'r of Soc. Sec.*, 345 Fed.Appx 163, 168–69 (6th Cir. 2009) (citation omitted).

Plaintiff finally argues that there is a conflict between Plaintiff's RFC and the job of bench assembler. Plaintiff argues that that the *DOT* is out-of-date regarding this position,

---

[12]   The Concepts of Necessary Conditions and Sufficient Conditions. https://www.sfu.ca/~swartz/conditions1.htm (last visited August 4, 2020).

in that it is semi-skilled, which Plaintiff is not qualified to perform, per the RFC. Assuming for the moment that Plaintiff's argument is correct, the remaining positions are of sufficient number in the national economy, which would then continue to result in the determination that Plaintiff is not disabled. *See Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (holding 6,000 jobs in the national economy was sufficient to sustain the Commissioner's burden). Now, while it is correct that the *Occupational Outlook Handbook* may be used by the ALJ for administrative notice of job data, 20 C.F.R. § 416.966(d), in this instant case, neither the alleged conflict was brought to the attention of the ALJ to address, nor does SSR 00-4p require "the ALJ attempt to address or resolve conflicts between the testimony of a vocational expert and the Occupational Outlook Handbook." *Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx 149, 158 (6th Cir. 2009).

Accordingly, substantial evidence supports step five of the ALJ's determination.

### H.    Conclusion

For these reasons, I would conclude that substantial evidence supports the Commissioner's denial of benefits, and I recommend **DENYING** Plaintiff's Motion, (ECF No. 11), **GRANTING** the Commissioner's Motion, (ECF No. 12), and **AFFIRMING** the Commissioner's final decision denying benefits.

### III.    <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed.

34

R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 5, 2020                                    S/PATRICIA T. MORRIS

                                                        Patricia T. Morris

                                                        United States Magistrate Judge

35